UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 07-158-GWU


JOHN A. ZUNDA,                                                                      PLAINTIFF,


VS.                                      **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                   DEFENDANT.


## INTRODUCTION

John Zunda brought this action to obtain judicial review of an unfavorable

administrative decision on his application for Supplemental Security Income (SSI).

The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind

shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its

weight.  Crouch, 909 F.2d at 855.

07-158 Zunda

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de minimis</u> hurdle in the disability determination process. <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-158 Zunda

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron

07-158  Zunda

v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence

to support the Commissioner's decision may be produced through reliance on this

expert testimony only if the hypothetical question given to the expert accurately

portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of

Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The record reveals that Zunda was previously found disabled in a decision

dated September 28, 1995.  (Tr. 53-55).  Alcoholism was noted to be a contributing

material factor to his disability.  (Tr. 54).  Congress later enacted the Contract with

America Advancement Act of 1996, Pub. L. No. 104-121, which prohibits

consideration of alcoholism or drug abuse as a contributing material factor to

disability.  (Tr. 14).  Pursuant to this act, the plaintiff's disability status was

reevaluated and his benefits terminated in January of 1997.  (Id.).  The claimant

contested the decision and after a lengthy period of administrative review, a denial

decision was issued on July 25, 2002.[1]  (Id.).  Zunda filed his current SSI claim on

January 18, 2005.  (Tr. 107).

On the current application, the Administrative Law Judge (ALJ) concluded

that Zunda, a 34-year-old man with a "marginal" education and no past relevant

work history, suffered from impairments related to chronic alcohol dependence,

---

[1]The undersigned affirmed this denial decision in an opinion dated March 31, 2004.  (Tr. 83-93).

07-158 Zunda

alcohol-related seizure disorder, Hepatitis C, a history of right ankle fracture, and borderline intelligence. (Tr. 17, 21). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 19-20). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21-22). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Kathleen Bradford included an exertional restriction to light level work reduced from a full range by such non-exertional limitations as (1) a need to avoid exposure to hazardous machinery; (2) an inability to ever climb ladders, ropes or scaffolding; (3) an inability to more than occasionally stoop, kneel, crouch or balance; and (4) a "limited but satisfactory" ability to relate to co-workers and the public, interact with supervisors, function independently, maintain attention and concentration, and deal with simple instructions. (Tr. 652-653). In response, Bradford identified a significant number of jobs in the national economy. (Id.). The ALJ then added a restriction regarding functional illiteracy. (Tr. 653). The witness testified that such a further limitation would reduce the aforementioned job numbers but a significant number would

remain.  (Id.).  Therefore, assuming that the vocational factors considered by the expert fairly characterized Zunda's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Zunda argues that the ALJ erred in evaluating his mental problems.  The plaintiff notes that Psychologists Phil Pack, an examining consultant, and Psychologist Thompson Prout, a non-examining medical reviewer, were the only mental health professionals of record to identify specific mental restrictions during the relevant time period.  The plaintiff notes that the ALJ indicated that he agreed with their assessments.  (Tr. 20-21).  However, each of these sources identified more severe mental limitations than those found by the ALJ.  Thus, the claimant asserts that the administrative decision is not supported by substantial evidence. The undersigned must reject Zunda's argument.

Psychologist Phil Pack examined Zunda in August of 2005.[2]  The examiner administered intelligence testing which revealed a verbal IQ score of 68, a performance IQ score of 68, and a full scale IQ score of 65.  (Tr. 249). Achievement testing revealed a second grade reading level.  (Id.). Pack diagnosed chronic alcohol dependence, mild mental retardation on current testing, and a

---

[2]Pack had previously examined the claimant in February of 2005.  (Tr. 235-240). However, as a result of concerns about malingering, the plaintiff's functional capabilities could not be assessed.  (Tr. 240).

possible cognitive disorder.[3]  (Tr. 250).  The examiner rated the plaintiff's ability as "fair" in relating to others including fellow workers and supervisors, "fair to poor" in understanding, retaining, and following instructions as well as in adapting to the stress and pressures of day-to-day work activity, and as "poor" in sustaining attention and concentration to performing repetitive tasks.[4]  (Tr. 250-251).  These are somewhat more severe mental limitations than those presented to the vocational expert.  While the claimant asserts that the ALJ indicated agreement with Pack's restrictions, the ALJ actually qualified this to state that he agreed that this opinion revealed that "the claimant had some limitations but he is not necessarily totally precluded from performing the basic mental demands of competitive, remunerative, unskilled work."  (Tr. 21).  The court notes that the psychologist also stated that "his test results may also be the results of residual alcohol use and it may be difficult to get a truly accurate picture without a sustained period of sobriety."  (Tr. 250).  Thus, Pack was unable to differentiate the alcohol abuse problems from other mental problems experienced by Zunda in the absence of a period of sobriety and, so, his report does not support his disability claim.

---

[3]Zunda does not argue that his mental problems met the requirements of Section 12.05C of the Listing of Impairments despite these IQ scores within Listing range.

[4]"Fair" was defined as "ability to function is limited but satisfactory" while "poor" was defined as "ability to function is seriously limited but not precluded."  (Tr. 251).

07-158 Zunda

Prout, the medical reviewer, reported the existence of such mental restrictions as a "marked" restriction of the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances as well as "moderate" restrictions in such areas as dealing with detailed instructions, maintaining attention and concentration for extended time periods, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, being aware of normal hazards and taking proper precautions and setting realistic goals or making plans independently of others. (Tr. 350-351). These are also more extensive mental restrictions than those found by the ALJ. As with Pack, the ALJ only indicated agreement with Prout's restrictions to the extent that Zunda suffered some, but not totally disabling mental limitations. (Tr. 21). Prout reported that substance abuse problems contributed significantly to his mental problems. (Tr. 352). Thus, alcoholism was clearly noted to be a "contributing material factor" and this report cannot be used to support an award of SSI as a result of Public Law No. 104-121.

In the prior denial decision, Zunda was found limited to a restricted range of light level work. (Tr. 75). Principles of res judicata require that the administration

07-158 Zunda

be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ." Among the mental limitations found at this time, in the absence of alcohol abuse, were an inability to deal with complex instructions, a "seriously limited but not precluded" ability to deal with detailed instructions, and a "limited but satisfactory" ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, deal with simple instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability and maintain personal appearance. (Tr. 75). The new evidence submitted does not indicate that, in the absence of alcohol abuse, his condition has worsened. While the current ALJ did conclude that improvement had occurred in the plaintiff's mental condition (Tr. 15), even if this determination were erroneous, the prior residual functional capacity assessment would still apply and provide an alternative ground to affirm the administrative decision.

Zunda does not allege any error with the ALJ's handling of the evidence of record relating to his physical condition. Dr. Sudideb Mukherjee, a non-examining

9

07-158 Zunda

medical reviewer, opined that the plaintiff would be limited to light level work, restricted from a full range by (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb ramps or stairs, balance, stoop, or kneel; and (3) a need to avoid hazards. (Tr. 354-363). The physical factors of the hypothetical question were essentially consistent with this opinion. No treating or examining source, including the staff at Appalachian Regional Healthcare (Tr. 241-244, 252-318, 366-417, 421-428, 526-531), the staff at Knox County Hospital (Tr. 418-420), Dr. Raju Vora (Tr. 429-435), and the staff at the Bristol Medical Center (Tr. 436-525) reported the existence of more severe physical limitations than were found by the ALJ. These reports provide substantial evidence to support the administrative decision.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of March, 2008.



**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**